Thomas H. Vidal (State Bar No. 204432)
*tvidal@pryorcashman.com*
Mary A. Balzer (State Bar No. 329750)
*mbalzer@pryorcashman.com*
**PRYOR CASHMAN LLP**
1801 Century Park East, 24th Floor
Los Angeles, California 90067-2302
Tel: (310) 683-6900

*Attorneys for Defendants*
Soli Deo Gloria Releasing, LLC and
Unplanned Movie LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SOLI DEO GLORIA RELEASING, LLC, a California limited liability company, and UNPLANNED MOVIE LLC, a California limited liability company

Plaintiffs,

v.

GTV MEDIA GROUP, LLC D/B/A GOD TV, a Florida limited liability company, ANGEL CHRISTIAN TELEVISION TRUST, INC., a Florida not for profit corporation, and DOES 1 THROUGH 5.,

Defendants.

**Case No.**

**COMPLAINT FOR:**

**(1) FALSE ADVERTISING;**

**(2) UNFAIR COMPETITION-VIOLATION OF CAL. BUS. & PROF. Code §§ 17200 *ET. SEC.;***

**(3) INTENTIONAL MISREPRESENTATION;**

**(4) NEGLIGENT MISREPRESENTATION;**

**(5) UNJUST ENRICHMENT**

**(6) COPYRIGHT INFRINGEMENT-VIOLATION OF 17 U.S.C. §§ 106 AND 501**

**JURY DEMAND**

## NATURE OF THE ACTION

1. GTV Media Group, LLC d/b/a GOD TV ("GOD TV") and Angel Christian Television Trust ("ACTT" and, together with GOD TV "Defendants") have misappropriated money by falsely advertising that they had a relationship or "partnership" with Unplanned Movie LLC ("Unplanned Movie LLC") and Soli Deo Gloria Releasing LLC ("Soli Deo Gloria" and, together with Unplanned Movie LLC "Plaintiffs"). Defendants advertised the partnership with Plaintiffs in order to solicit donations from supporters of the pro-life film, *Unplanned,* which was produced and exclusively licensed by Plaintiffs. Defendants knew full well that they had no partnership or other relationship with Plaintiffs and no rights in connection with the film. Defendants wrongfully solicited and accepted donations from members of the public who believed that their money was used in support of *Unplanned*. Plaintiffs have brought forth this lawsuit in order to recover damages stemming from the misappropriation.

2. Defendants have displayed portions of *Unplanned* and its official trailer on their website without permission from the copyright owner, Unplanned Movie LLC, or the exclusive licensor, Soli Deo Gloria. Defendants have used the video clips of *Unplanned* on their website to entice onlookers to make donations to themselves by intimating a nonexistent partnership with Plaintiffs. Defendants have willfully ignored the demand letter sent by Plaintiffs' counsel to remove the clips of *Unplanned,* and as of the date of filing, May 22, 2020 clips from *Unplanned* were available for viewing on Defendants' website.

## PARTIES

3. At all times material to this Complaint, Soli Deo Gloria has been and now is a limited liability company organized and existing under the laws of California. Soli Deo Gloria's members are citizens of California. Soli Deo Gloria was formed to distribute *Unplanned*.

4. At all times material to this Complaint, Unplanned Movie LLC has been and now is a limited liability company organized and existing under the laws of California. Unplanned Movie LLC's members are citizens of California. Unplanned Movie LLC was formed to produce *Unplanned*.

5. Defendant GOD TV is an international Protestant Christian media network. GOD TV broadcasts non-denominational programming in keeping with the UK Evangelical Alliance Basis of Faith. At all times relevant to this action, GOD TV has been and now is a limited liability company organized and existing under the laws of Florida. Upon information and belief, GOD TV's members are citizens of Florida.

6. At all times relevant to this action defendant ACTT has been and now is a not-for-profit corporation incorporated in Florida with its principal place of business in Orlando, Florida. Defendant ACTT is the managing member of GOD TV.

7. At all times mentioned herein, ACCT approved or ratified the acts of its agents, GOD TV. At all times mentioned herein, GOD TV was acting as the agent for and on behalf of ACCT and each other; commingled the funds and other assets of ACCT with their own funds and assets in conducting business through ACCT; failed to segregate ACCT's funds from their own funds; diverted ACCT's funds and assets for their own use; treated ACCT funds and assets as their own; failed to maintain minutes or other adequate corporate records for ACCT or GOD TV; failed to adequately capitalize or insure ACCT or GOD TV to meet anticipated obligations; failed to maintain adequate corporate assets to meet the anticipated obligations of ACCT or GOD TV; used GOD TV as a "mere shell," instrumentality or conduit for their own personal affairs; used GOD TV to enter into contracts for their own benefit; diverted GOD TV assets to the detriment of creditors, so as to concentrate the assets, including the value of GOD TV as an ongoing business in themselves while leaving the liabilities in GOD TV; and used the name "God TV" interchangeably with the name Angel Christian Television Trust, and others intentionally to confuse parties with whom they dealt and to hide the true capacity in which they were contracting in an effort to avoid

performance and as a shield against personal liability. Therefore, to recognize the corporate separateness of ACCT from GOD TV, or each of them, would perpetrate a fraud and would be inequitable, and thus, GOD TV should be treated as the alter ego of ACCT and the corporate entity of ACCT should be disregarded as a cover for fraud as alleged herein.

8. Plaintiffs are informed and believe, and thereupon allege, that at all times herein mentioned, Defendants and Does 1 through 5, inclusive, and each of them, were the agents, joint venturers, partners, representatives, or employers of each other and, in doing (or failing to do) the things alleged herein, were acting within the course, purpose, and scope of their agency, venture, partnership, representation, or employment. The acts, omissions, and conduct alleged herein of each Defendant were known to, authorized, and ratified by each such other Defendant. Plaintiffs further allege, in the alternative, that some or each of the Defendants acted at times independently of all other Defendants to cause damage and injury to Plaintiffs.

9. Plaintiffs are presently unaware of the true names and capacities of the defendants sued herein as Does 1 through 5, inclusive, and therefore sues each of those defendants by fictitious names. Plaintiffs will seek leave to amend this complaint to allege the true name and capacity of each Doe defendant when ascertained. For convenience, all references herein to "Defendants" shall be deemed to include all fictitiously named defendants, and each of them, unless otherwise specifically alleged. Plaintiffs allege on information and belief that each Doe defendant is, in some manner, legally responsible for the acts alleged in this complaint and have proximately caused harm and injury to Plaintiffs.

10. All references hereafter to "Defendants" shall be deemed to include all Defendants, and each of them, unless otherwise specifically alleged.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the action arises under federal law.

12. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in this district.

13. All conditions precedent to the prosecution of this action have been satisfied, fulfilled, extinguished, waived or otherwise executed.

**FACTUAL BACKGROUND**

14. *Unplanned* is a 2019 pro-life drama written and directed by Cary Solomon and Chuck Konzelman, based on the memoir of the same name (the "Memoir") written by Abby Johnson. *Unplanned,* which was produced by Unplanned Movie, LLC, was released theatrically in spring of 2019.

15. Soli Deo Gloria has the sole and exclusive right to distribute and market *Unplanned*.

16. Unplanned Movie LLC is the copyright owner of *Unplanned*.

17. In May and June of 2019, Plaintiffs began laying the foundation for a plan to present screenings of *Unplanned* on college campuses. Plaintiffs entered into discussions with Kristen Hawkins, the founder and director of a college-campus focused pro-life organization called Students for Life ("SFL").

18. Plaintiffs agreed to work with Hawkins and SFL in order to screen *Unplanned* on college campuses. Hawkins wanted to fundraise from wealthy donors to sponsor screenings at colleges and universities. Plaintiffs agreed to this plan in principle. The caveat was that because Plaintiffs had unrecouped investors, a portion of the donations raised by SFL had to be paid to Plaintiffs.

19. Ultimately, Plaintiffs decided that if a donor gave $250,000 to Plaintiffs Plaintiffs would grant an unlimited and perpetual license for live screenings on college campuses to SFL. Mike Manhardt, a producer of *Unplanned*, found a donor willing to donate $100,000 to Plaintiffs.

20. Although the $100,000 offer was $150,000 less than the goal, Plaintiffs agreed to speak with the individual donor, Joe Orlando, on the understanding that he would contribute the entire amount as an individual.

21. On September 13, 2019, Chuck Konzelman, a principal of Plaintiffs, prepared a draft agreement for Joe Orlando. Under that proposed agreement, the license fee of $100,000 would give SFL the right to screen *Unplanned* on college campuses.

22. After Plaintiffs sent the draft agreement, they learned that Joe Orlando was a principal with GOD TV and wanted to assign the deal to ACTT, which was described to Plaintiffs as a charitable trust attached to GOD TV. This was directly counter to the intent of Plaintiffs that the money would be donated by an individual with no ulterior motives.

23. Regardless, in the interest of making the deal work, negotiations continued. During the course of negotiations, Rafael Simpson, a representative of Defendants, asked if Plaintiffs would agree to pay the $100,000 proposed licensing fee over to GOD TV for advertising *Unplanned*. If Plaintiffs had agreed to this, it would have meant that they would receive no cash to distribute to its investors and would have essentially allowed GOD TV to take credit for *Unplanned* by promoting the film on its own media outlets.

24. Nervous that GOD TV was looking to take credit for and financially benefit from *Unplanned* to the detriment of Plaintiffs, Plaintiffs decided to abandon negotiations. No agreement between the parties was ever executed.

25. Although no licensing agreement was ever entered into between Plaintiffs and Defendants, Plaintiffs separately provided licenses to SFL to show *Unplanned* at various specific college and university campuses. At no point did Plaintiffs permit or grant any kind of partnership, joint venture, sublicensing agreement, or other arrangement between SFL and Defendants regarding the on-campus screenings of *Unplanned*.

26. In October 2019, Plaintiffs discovered that there was some form of preexisting memorandum of understanding between SFL and Defendants, through

which, Defendants intended to operate the SFL screenings of *Unplanned* as a partnership.

27. Upon information and belief, on October 4, 2019, Defendants publicly announced a fundraising campaign to support a pro-life campaign entitled "Life Matters." In order to generate support for this campaign, GOD TV put at least a dozen videos on its website describe the purpose of the campaign "Life Matters." The only significant component of the campaign as shown in those videos appears to be the screening of *Unplanned* on various college and university campuses. Several of the fundraising videos on GOD TV's website clearly insinuate that it is in a partnership with *Unplanned,* and therefore with Plaintiffs, who hold the copyright and exclusive licensing right. These videos, some of which are filmed in California, feature several well-known pastors as well as Abby Johnson, the author of the memoir that served as the inspiration for *Unplanned*. The fundraising effort for "Life Matters" is directly tied to funding screenings of *Unplanned* on college campuses.

28. As part of this fundraising effort, Defendants solicited and accepted donations from residents of California. Additionally, Defendants filmed several high profile ministers, including California residents Che Ahn and Kris Valloton, in short video clips endorsing the fundraising campaign and *Unplanned* at their respective homes in California. As of May 13, 2020 many of these videos remain on GOD TV's website.

29. As of May 13, 2020, video excerpts of *Unplanned* and the official preview of *Unplanned* remain available, without permission from Plaintiffs, on Defendants' website.

30. On October 30, 2019, Plaintiffs, through their principals, became aware of Defendants' fundraising campaign, in which GOD TV claims to be "partnered" with Plaintiffs to bring *Unplanned* to college campuses in conjunction with Students for Life. Upon information and belief, Defendants' fundraiser has successfully raised capital funds for the showings of *Unplanned* far in excess of $75,000. Plaintiffs, the

exclusive licensor and the copyright owner of *Unplanned* have not received any remuneration related to Defendants' fundraising efforts.

## III. COUNTS

### COUNT I: FALSE ADVERTISING

(By All Plaintiffs Against All Defendants)

31. Plaintiffs re-allege and incorporate paragraphs 1 through 30, as if fully set forth herein.

32. In creating and promoting their fundraising campaign, Defendants misled the general public with false statements regarding their relationship to *Unplanned*.

33. Defendants knew that they were not in any legally authorized partnership with *Unplanned*.

34. Defendants made these misleading statements in order to induce the general public to donate money to Defendants.

### COUNT II: UNFAIR COMPETITION-VIOLATION OF CAL. BUS. & PROF. CODE §§17200 *ET. SEQ*

(By All Plaintiffs Against All Defendants)

35. Plaintiffs re-allege and incorporate paragraphs 1 through 30 as if fully set forth herein.

36. Defendants have committed acts of unfair competition as defined by Business and Professions Code section 17200 in performing the acts described herein and in failing to perform the acts described herein because these practices and acts were unfair, unlawful, or fraudulent.

37. Defendants' misrepresentations in their fundraising campaign regarding their connection to *Unplanned* was a scheme to enrich themselves (*i.e.* by getting potential financial supporters of *Unplanned* to give money to Defendants instead) to Plaintiffs' detriment in violation of California's Unfair Competition Law.

38. The unfair, unlawful, and fraudulent acts and practices of Defendants present a continuing threat to Plaintiffs and to members of the public in that these acts and practices are ongoing and are harmful and disruptive to business.

39. As a direct and proximate result of the aforementioned acts and practices, Defendants have taken and received and continue to hold as ill-gotten gains monies intended to be directed to Plaintiffs to support *Unplanned* and its message, which money should be restored to Plaintiffs, its rightful recipient,

40. Plaintiffs also is entitled to punitive damages under California Civil Code § 3294 because Defendants' conduct was undertake with oppression, fraud, and malice against Plaintiffs.

**COUNT III: INTENTIONAL MISREPRESENTATION**

(By All Plaintiffs Against All Defendants)

41. Plaintiffs re-allege and incorporate paragraphs 1 through 30, as if fully set forth herein.

42. Defendants misrepresented that they were in a partnership with *Unplanned*.

43. Defendants knew that no deal had been signed and that there was in fact no partnership between them and either Soli Deo Gloria or Unplanned Movie LLC.

44. Defendants advertised themselves as being in a partnership with Plaintiffs in order to solicit donations from viewers who would support *Unplanned*'s pro-life message.

45. As a direct and proximate result of Defendants' fraudulent fundraising efforts, they received donations intended to be used to support Plaintiffs and *Unplanned's* pro-life message, which, upon information and belief, far exceed $75,000.

46. Plaintiffs did not benefit financially from Defendants' fraudulent fundraising and have lost the ability to solicit donations from viewers in support of *Unplanned* who believe they have already donated to benefit Plaintiffs.

**COUNT IV: NEGLIGENT MISREPRESENTATION**

(By All Plaintiffs Against All Defendants)

47. Plaintiffs re-allege and incorporate paragraphs 1 through 30, as if fully set forth herein.

48. Defendants misrepresented that they were in a partnership with the film.

49. Defendants were negligent in stating that fact because they should have known that there was in fact no partnership between them and Plaintiffs.

50. Defendants advertised themselves as being in a partnership with *Unplanned* in order to solicit donations from viewers who would support *Unplanned*'s pro-life message.

51. As a direct and proximate result of Defendants' fraudulent fundraising efforts, they received donations, which, upon information and belief, far exceed $75,000.

52. Plaintiffs did not benefit financially from Defendants' fraudulent fundraising and have lost the ability to solicit donations from viewers in support of *Unplanned* who believe they have already donated to Plaintiffs.

**COUNT V: UNJUST ENRICHMENT**

(By All Plaintiffs Against All Defendants)

53. Plaintiffs re-allege and incorporate paragraphs 1 through 30, as if fully set forth herein.

54. Defendants received a benefit at Plaintiffs' expense when Defendants lied about their relationship to Plaintiffs, causing potential supporters of *Unplanned* to donate to Defendants instead of Plaintiffs.

55. Specifically, these Defendants received the benefit of being able to raise fundraising money under the auspices of promoting *Unplanned*.

56. Defendants unjustly enriched themselves by wrongfully marketing themselves as partners of Plaintiffs and intercepting the revenue stream of donations made to support *Unplanned* that otherwise would have gone to Plaintiffs.

57. However, Plaintiffs did not receive any reciprocal benefit, and Defendants have not fully accounted for the money or turned the wrongfully collected donations over to the Plaintiffs.

58. Therefore, Defendants have unjustly retained the benefit of donations made by supporters who believed they were providing funds to *Unplanned* and Plaintiffs and equity dictates that Plaintiffs should be awarded restitution in an amount in excess of $75,000, the exact amount to be proven at trial.

**COUNT VI: COPYRIGHT INFRINGEMENT §§ 106 AND 501**

(By Unplanned Movie LLC against All Defendants)

59. Plaintiffs re-allege and incorporate paragraphs 1 through 30, as if fully set forth herein.

60. Defendants have infringed Unplanned Movie LLC's copyright in Unplanned in violation of Sections 106 and 501 of the Copyright Act, 17 U.S.C. §§ 106 and 501.

61. Defendants' acts of infringement are willful, intentional, and purposeful, in disregard of and with indifference to Unplanned Movie LLC's rights.

62. As a direct and proximate result of said infringement by Defendants, Unplanned Movie LLC is entitled to damages in an amount to be proven at trial.

63. Unplanned Movie LLC is also entitled to Defendants' profits attributable to the infringement, pursuant to 17 U.S.C. § 505 and otherwise according to law.

64. Unplanned Movie LLC is entitled to injunctive relief and redress for Defendants' willful, intentional, and purposeful use and exploitation of Unplanned for their own financial benefit with full knowledge that such use constituted infringement of, and was in disregard of, Unplanned LLC's rights. Defendants' conduct is causing, and unless immediately enjoined will continue to cause enormous and irreparable harm to Unplanned Movie LLC. Unplanned Movie LLC is suffering lost revenue from donors diverted to Defendants' website and "Life Matters" campaign.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs respectfully pray as follows:

1. For compensatory damages in an amount according to proof at trial but in excess of $75,000;
2. For statutory damages
3. For punitive damages, as the Court deems reasonable and appropriate;
4. For restitution for the fraudulently collected donations to *Unplanned*;
5. For costs of the suit herein; and
6. For such other and further relief as this Court deems just and proper.

**PRYOR CASHMAN LLP**

Dated: May 27, 2020 By: ______________________

Thomas H. Vidal
*tvidal@pryorcashman.com*
Mary A. Balzer
*mbalzer@pryorcashman.com*

*Attorneys for Plaintiffs*
Soli Deo Gloria Releasing, LLC and Unplanned Movie LLC

**DEMAND FOR JURY TRIAL**

Plaintiffs Soli Deo Gloria Releasing, LLC and Unplanned Movie LLC hereby demand a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

**PRYOR CASHMAN LLP**

Dated: Mav 27. 2020 Bv: ______________________

Thomas H. Vidal
*tvidal@pryorcashman.com*
Mary A. Balzer
*mbalzer@pryorcashman.com*

*Attorneys for Plaintiffs*
Soli Deo Gloria Releasing, LLC and
Unplanned Movie LLC